Arnoldo Lopez Ramos is a Mayan. He is from an indigenous area in a country where 90% of indigenous people live in dire poverty and where employment opportunities are few. See the Administrative Record at 123 State Department Report. He fled in 1992 during the war in which indigenous villagers were the main victims in over 200,000 killings according to the United Nations Historical Clarification Commission. Indigenous people of Guatemala found themselves trapped in the middle of a power struggle in which guerrillas selectively killed Indians they accused of cooperating with the military and the military carried out a well-documented string of massacres of Indians suspected of cooperating with the was in this context. What percentage is he of the indigenous background? He is fully K'iche' Mayan, both of his grandparents on both sides. He speaks the language? He does not speak the language. He was raised as a young man to not speak the language. It's actually a matter of survival that you not use indigenous languages but his grandparents all spoke K'iche' as did his aunt. What is the basis for your argument of the fear of persecution? I'm just trying to establish the context in which he fled in 1992, right in the midst of this war which is the elephant in the room that is not addressed and is taken very much out of context in the BIA's decision. They reduced this to a one-time incident. I'm just He was actually taken hostage. He was tied up. He was threatened with death. He was told not to continue his small business which was an entrepreneurial business of selling clothing which the guerrillas was contrary to the guerrillas' political agenda of being a communist-oriented URNG, the revolutionary guerrillas at that time were opposed to any sort of entrepreneurial endeavors and were opposed to the government. An indigenous person was very much at the mercy of guerrillas as they were of the military and when this occurred to him it was of course a very traumatic event which drastically changed his life. He was unable to carry on with his livelihood. The board found that this did not amount to past persecution. They found that it was an unfulfilled threat that constitutes harassment rather than persecution. But Petitioner suffered more than just an unfulfilled threat. He suffered physically being taken hostage, tied up, left without water and means to escape. What evidence do we have though that he was selected either because of his political views or because of his indigenous background? The board makes no finding on the nexus. However, this is based on imputed political opinion in that the guerrillas directly stated to him that they did not want him selling his wares and having this business of selling things and that he was not to continue that business. Right, but it's very frustrating for us to sit here and learn that the guerrillas held him for three hours on one occasion. He's a traveling salesman selling clothes. How are we supposed to distinguish this from mere robbery? What is there that makes us think that they stopped him and warned him because of his political views or because he was a K'iche? His credible testimony I think is the best evidence we have here. Incredible testimony alone of course can be sufficient. He says, they told me if I will keep selling stuff they will either take me or kill me. They didn't like the idea that one can survive by himself. They tied me up hands and feet. There isn't one word in there about his political views or his indigenous background. I think here we're looking at his activities that were found. Being a traveling salesman selling clothes, I don't know why that would offend the guerrillas. Maybe he was competing with them. Maybe he was in their territory. Maybe they didn't like his looks on that particular day. But there isn't anything in what he's testified that suggests that they warned him off because of his political activities, political views or because he was indigenous. Well I think if we look at the administrative record at page 71, 72, 77, his own words show that his understanding is he's being told to discontinue this business. And I think for an indigenous person in Guatemala at this time, they're expected to remain in their villages and to be controlled and to report for civil patrol duties and to not try to make it on their own and take off. You're really asking us to read quite a bit into that record though aren't you? Well that's what we have. Unfortunately we have his testimony which in an asylum case is all Right, but all they've done is they've warned him. They haven't, again we don't have any reference whatsoever. He didn't say they told me not to come into this area because I'm K'iche' or they told me not to come in here because people with my political views are not welcome in this sector of the country. That's right. What they told him was to desist from his business of selling clothing. From selling clothes. If they simply wanted to steal the clothing, why would they tell him don't sell clothing anymore? It actually is illogical if we look at it, you know, trying to understand the significance here. And he understood it to mean if they saw him again selling clothing they would kill him. Well that was a time of tremendous strife in the country. And there were a lot of people who were beaten and a lot of things, ugly things were happening. That's correct. Well, what is, the BIA seemed to find that while what happened to him didn't really reach a level of past persecution, that he really was not, the passage of time and the change in circumstances further undercut his position that he has a well-founded fear of future persecution. That's how I kind of read it. Right. I mean, why do you say that the evidence compels us to conclude that he has a well-founded fear of future persecution? Yes, Your Honor. And the board finds that it doesn't rise to the level of past persecution and they secondly find that even if it did, there's not the well-founded fear given to things, passage of time and that his family remained in the country. However, I want to look back to this Court's case law and in, as far as passage of time, there's no hard rule that alone, and I'd like to cite, let's see, Gonzales, where this court in 1996 found no rule that if a departure was a considerable time after the first threat, then the fear was not genuine or well-founded. And Tercios, remaining in El Salvador for several months after release, did not negate a well-founded fear. So I think a matter of five or six months, which is what we're talking about here, in I wouldn't be able to keep doing what I was doing to survive, then I'd have to leave. Well, I thought his founded fear would be measured not from the time he left, but from the time of the hearing. Yes, that's correct. First, they found that that destroyed his finding of past persecution because some time had passed before he left. Yes. And secondly, yes, time is now the passage of time until the date of the Board's decision is that everything is fine now, the passage of time, there's no evidence that there was any persecution. Yes, that's the part I'm answering you about. He submitted numerous reports from Amnesty International, most particularly several reports as well as from the State Department, and those were dated from 2000 through 2003, just prior to the Board's decision. And in there, he cites in our briefing, and he shows they're reporting a human rights meltdown so severe, a deterring human rights situation, and the State Department report 2002 says serious problems remained, and that the security forces and even some guerrilla activities still remained. So the peace accords in 96, by 2002, all of the human rights reports are saying the situation is actually getting worse, it's still not under control, lawlessness, terror, and all Counsel, is there any evidence that if Mr. Lopez Ramos returns to Guatemala now that anybody is actually looking for him? Well, he's not been there for 15 years, that's correct. He's been living in the United States, and his... We have no evidence in the record that his family's been approached by guerrillas saying, you know, where did he go, we're looking for him. That's correct. The difference here is, and again, they point out that his family members remained in the village, left his family, was targeted on his own for his activities of trying to sell and make money for profit. His family hasn't suffered any problems, though, because they're indigenous. He testifies that they grew up in tremendous fear of the guerrillas, and they maintained a life of fear. There's no question that Guatemala is a very, very dangerous country and a very difficult place to live. There's no evidence of a specific threat made to the family. And how do you... I'm sorry. Go ahead. I just want to... Yeah. He still has family members. He still has extended family in Guatemala. And so far as the record demonstrates, they have not suffered any persecution on account of being K'iche'. That's correct. There's also no evidence that they attempted to leave the village and strike out on their own and earn money and make a living and not just live off the land in dire poverty. All right. You have used your time. We helped you to use it. We'll give you a minute on rebuttal if you feel you wish to add anything. Thank you. May it please the Court. I'm Josh Taylor. I represent the government. The single incident suffered by the petitioner at the hands of the guerrillas where he was tied up, threatened, and his clothes were robbed from him that he was selling does not rise to the level of past persecution, and that it does not compel a finding         Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. All calm. Are you reporting from Sudbury, Franklin?   Oh, I'm cooking almost fried it up.  Forgot to report I'm Resident. Okay. I'm staying almost fried. City, I'm staying.'" Pursuing an assault that violated international trade, is a violation against the rights of   Sure. I am such a sore nose for that. I don't ... Brave. Great person here, and thank you. You were � The BETA seemed to say that what happened to him wasn't persecution. If you take just his testimony as to what happened to him back in 1992, do you really agree that it's only harassment? I believe that this court's prior rulings in Hoxha and Lim are instructive on that issue, and the board cited those rulings. Well, I think Lim went to a threat alone. Threats alone, correct. In Hoxha, there was a direct confrontation where the petitioner was actually beaten by people who overheard him speaking Albanian. And in Lim, there was no direct face-to-face confrontation as in this case, but I feel that those cases were instructive. Here we have both. Here we have both a confrontation, physical action, and a threat. Correct. We have both a confrontation. We do not have physical harm, however, to distinguish it from Hoxha where the petitioner's face was broken. In terms of does that compel a finding, again, the government would rely on the substantial evidence standard. Well, I'm just asking about the legal standard where you have both the threat and the detention and physical confrontation. Do we have any cases that say that that, that present that situation? You're asking if there are any cases with that particular situation? Yeah. Because I know we have them where there's a threat and then we have them where there's just confrontation. None that I have found, Your Honor. Okay. Are there any further questions? Unless there are any further questions. No. All right. Thank you. Thank you. Very briefly. Your Honor, in Navas, this court held death threats alone can constitute persecution. The court in Kaiser in 2004, threats to life within the context of political turmoil have long been sufficient to satisfy the objective fear of persecution. What matters is whether the group making the threat has the will and ability to carry it out. I'd like to draw the court's, Ventura and Lopez, both Guatemalan cases. Ventura was threatening notes alone, three threatening notes painted on the wall. Lopez, he was tied up, taken hostage, put in a building and the building was set on fire. Both cases the court found pass persecution and on account of imputed political opinion. In Lopez, it was a pro-establishment opinion because of working for a wealthy landowner. In Ventura, it was that some of his family were associated with the military. Petitioner's father is in the civil patrols associated with the military. In both of those cases, one with no physical confrontation, Ventura, and Lopez with a direct, taking hostage, tied up physical confrontation, both cases this court found pass persecution and on account of imputed political opinion. And I would say this is clearly between those two and both of those were granted pass persecution and imputed political opinion. And I think here in Zhang, for example, the imposition of substantial economic disadvantage can amount to persecution. I'd like to cite Zhang and Bobola because I think that's really the heart of this case and that he was being denied his means to make a livelihood. Finally, I'm sorry, I did want to address cancellation of removal. I want to bring up Reyes-Lendas' due process violation. You fully briefed it. We do understand your position on it. Thank you, counsel. The case just argued is submitted for decision. We'll hear the next case, which is Cuerapaldez v. Keisler.
judges: Schroeder, Hall, Bybee